**Gerardo Michael
HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–86–00403–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 12, 1987.

Andrew Carruthers, San Antonio, for appellant.

Fred G. Rodriguez, Criminal Dist. Atty., Michael Granados, Margaret Embry, Edward Shaughnessy, III, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CHAPA, JJ.

## OPINION

BUTTS, Justice.

Following a mistrial, appellant was retried and convicted of intentionally and knowingly causing serious bodily injury to a child. TEX.PENAL CODE ANN. § 22.04(a)(1) (Vernon Supp.1987). The trial court assessed punishment at 60 years' imprisonment.

On July 25, 1985, appellant was baby-sitting the two year old child of his girlfriend. The child, Charles Allen Friend, was immersed in a tub of hot water, resulting in severe burns over the lower 49% of his body. The child was subsequently hospitalized and died. The points of error raised are: first, whether the trial court abused its discretion or committed reversible error in declaring a mistrial and discharging the jury *sua sponte* in appellant's first trial. Second, whether the trial court on retrial erred in refusing to allow appellant to present evidence of former jeopardy. Third, whether the trial court on retrial abused its discretion by refusing to grant a mistrial based on the prosecutor's reference to punishment during voir dire when appellant had elected to have the trial court assess punishment. Fourth, whether the trial court on retrial abused its discretion in not ordering a change of venue.

The record in the first trial reveals that testimony during the guilt/innocence phase lasted two days and included the testimony of the appellant and nine witnesses. The jury began deliberations at 10:30 a.m. The first jury notes at 7:58 p.m. indicated the jury could not reach a unanimous decision. However, a few minutes later the foreman advised the court that the jury was not "hung" yet. The trial court, on its own initiative, then gave a supplemental charge to the jury to: "please inform the court for sure if you are deadlocked." The jury continued deliberations. Three hours later the foreman of the jury advised the court that the jury was deadlocked at 11 to 1. Before declaring the mistrial, the trial court brought the jury into the courtroom and asked the foreman if the jury could resolve the issues if they were given further time to deliberate. The foreman in the presence of all the jurors told the court that further deliberations would not break the impasse. Neither the State nor appellant requested that the jury be polled, nor was there any objection taken to the lack thereof.

The Code of Criminal Procedure provides for judicial discretion in dismissing the jury when it becomes improbable that the jury can agree on a verdict:

> After the cause is submitted to the jury, it may be discharged when it cannot agree and both parties consent to its discharge; or the court may in its discretion discharge it where it has been kept together for such a time as to render it altogether improbable that it can agree.

TEX.CODE CRIM.PROC.ANN. art. 36.31 (Vernon 1981). *Muniz v. State,* 573 S.W.2d 792, 793–94 (Tex.Crim.App.1978), *cert. denied,* 442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed. 2d 291 (1979); *Gonzales v. State,* 730 S.W.2d 196 (Tex.App.—San Antonio 1987, no pet.). The trial court's exercise of discretion will be judged by the amount of time the jury deliberates in light of the evidence and nature of the case. *Brown v. State,* 508 S.W.2d 91, 93 (Tex.Crim.App. 1974); *see also, Gonzales, supra* at 197. Unless the defendant can demonstrate an abuse of discretion by the trial court, no reversible error is shown. *Garcia v. State,* 522 S.W.2d 203, 208 (Tex.Crim.App.1975);

*Williams v. State,* 476 S.W.2d 300, 305 (Tex.Crim.App.1971). The test on appeal is abuse of discretion, and the burden is on the defendant to show this.

■ In the instant case appellant argues the trial was complicated, emphasizing the lengthy statement of facts and the number of witnesses testifying. However, the jury charge and statement of facts indicate the main issue was the culpable mental state of the appellant (intentionally, knowingly, criminally negligent, and mistake of fact were charged). Under the circumstances of this case, the trial court had adequate cause to believe that the jury had been kept together for such time as to render it altogether improbable that it would agree. *Brown v. State,* 508 S.W.2d at 93; *See Koehler v. State,* 653 S.W.2d 617 (Tex.App. —San Antonio 1983), *rev'd on other grounds,* 679 S.W.2d 6 (Tex.Crim.App. 1984). We find the trial court did not abuse its discretion in discharging the jury. Absent a showing of abuse of discretion there is no reversible error. *Garcia, supra* at 208. The first point of error is overruled.

■ Next, appellant contends that the trial court should have allowed him to present evidence before the jury in support of his plea of former jeopardy. Evidence offered by bill of exceptions in support of the special plea consisted of the testimony of one member of the jury from the first trial. This witness first testified that she was unable to state conclusively whether or not the jury might have reached a unanimous verdict if it had been allowed to continue to deliberate. Further, when asked if the trial court had given the jury additional time to deliberate could the jury have resolved its differences, she answered, "I don't know that we could have, no." This is insufficient evidence to raise an issue to be submitted to the jury to determine whether or not the first jury was prematurely discharged before it could reach an agreement and render a verdict. No other juror testified, nor was any other evidence presented to show abuse of discretion. In the absence of a fact issue, the refusal of the trial court to allow appellant to offer this evidence to the jury does not constitute error.

■ The double jeopardy clause of the Fifth Amendment of the United States Constitution protects the defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense. *Chvojka v. State,* 582 S.W. 2d 828, 830 (Tex.Crim.App.1979); *see United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). "Whether there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on whether there is a manifest necessity for the mistrial or the ends of justice would otherwise be defeated." *Chvojka, supra* at 830, *citing Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). It has not been shown that the trial court abused its discretion in determining there existed a "manifest necessity for the mistrial." We find the first trial was not improperly terminated. Inasmuch as the first trial was not improperly terminated no fact issue of former jeopardy arose to be placed before the jury, therefore, the trial court did not err in failing to allow the appellant to present evidence to the jury on the issue. *Guerra v. State,* 690 S.W.2d 901, 908–09 (Tex.App.—San Antonio 1985, no pet.). The second point of error is overruled.

In his third point of error appellant contends the trial court should have granted his requested mistrial after the prosecutor, during voir dire, stated that lesser included offenses call for lesser punishment. The preceding remarks of appellant's counsel during his general voir dire are significant:

DEFENSE COUNSEL: But that does not necessarily mean we are talking about your ability as a juror to find guilt on three offenses. You can find guilt on one offense; that doesn't mean you are only talking about three offenses, either, because we have something in Texas known as lesser

included offenses. It's called lesser included offenses.

And what this means, to make it overly simplistic, is that within an offense as broad as homicide, necessarily when we are talking about a murder, necessarily there are offenses that are included in a murder. I can give you an example.

If you were to kill someone or murder someone by striking them with a hammer, necessarily you assaulted that individual because our law says that if you strike an individual, if you touch another individual without that person's consent, you have assaulted that individual. And if that assault happens to cause serious bodily injury you have also committed the offense of aggravated assault.

So you see, within an offense as broad as murder you do have what we call lesser included offenses. And if the evidence raises a lesser included offense it is the prosecution's responsibility to prove to the jury beyond a reasonable doubt that the defendant was not guilty of a lesser included offense but was in fact guilty of the greater offense which is charged in the indictment. Does everyone understand why?

The concept of lesser included offenses is, again, to oversimplify, if you have a number like 10, necessarily included within 10 is the number 5. That's the same way with lesser included offenses.

\*     \*     \*     \*     \*     \*

The remarks by the prosecutor follow:

And also when you say that you necessarily have the number 5 and the number 10, that's true. And when you say that you have lesser included offenses of murder, that's also true. Say we could charge that man with aggravated assault, or if he were driving along and he simply did not see the woman and ran over her, he might be found guilty of involuntary manslaughter, which not only is a lesser included offense but *which has a much lesser punishment*

*than does murder.* Okay. (Emphasis added).

Although appellant did not follow the recommended procedure, and simply moved for mistrial, we will address the issue. *See Brooks v. State,* 642 S.W.2d 791, 798 (Tex. Crim.App.1982) for the proper method of preserving this kind of alleged error.

Immediately following the motion for mistrial, the trial judge, *sua sponte,* instructed the jury to disregard the statements of the prosecutor and instructed the attorneys not to allude to that topic again. There was no further mention of punishment.

■   We agree with the trial court that the allusion to punishment was not proper. It is axiomatic that the trial court has wide discretion over the course of the voir dire of the jury panel. In this case the prosecutor did not discuss the range of punishment in the offense of injury to a child, nor, in fact, any range at all. The statement was that the lesser included offense of involuntary manslaughter carries a "much lesser punishment than does murder." Involuntary manslaughter was not submitted in the jury charge. The appellant did not request to examine the panel to determine whether harm resulted in spite of the admonition. *Compare, Worton v. State,* 492 S.W.2d 519, 521 (Tex.Crim.App.1973) (statement by prospective juror in presence of panel). Moreover, appellant requested the court not to use the phrase "punishment" in its instruction. The court also charged the jury to consider only the guilt or innocence of appellant and nothing else. We find the instruction was sufficient to cure any error, and there was no abuse of discretion.

Lastly, appellant contends that the trial court erred in denying his motion for change of venue.

Before appellant's first trial, he filed a "Motion for Change of Venue" accompanied by two supporting affidavits. The State filed controverting affidavits. In that trial the only witness at the change of venue hearing was appellant's court-appointed investigator, Joe Neaves. Neaves

stated that several articles regarding appellant's arrest had appeared in local newspapers and that the case had received some coverage on the local television. He testified that he had spoken to a number of Bexar County residents about the charges against appellant and that he was of the opinion that appellant could not receive a fair trial in Bexar County, Texas. No documentary evidence such as newspaper articles or transcriptions of television reports was offered. That motion was denied.

Appellant's first trial ended in a mistrial. Before selection of the jury in the second trial, appellant orally reurged his previous motion for a change of venue without offering any additional or new evidence. At appellant's request, the trial court withheld ruling until after the jury selection process had been completed, at which time the oral motion was overruled.

We will discuss the first trial and the question of change of venue at that time. Due process requires that a criminal accused be tried by a jury drawn from a community of people which has not been pervasively exposed to the prosecution's version of the criminal episode which forms the basis of the accusation lodged against the defendant. *Rideau v. Louisiana,* 373 U.S. 723, 727, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963). This due process guarantee does not entitle a criminal accused to a panel of jurors who are entirely ignorant of the facts and issues of a given crime. *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).

The Texas Code of Criminal Procedure provides:

(a) A change of venue may be granted in any felony or misdemeanor case punishable by confinement on the written motion of the defendant, supported by his own affidavit and the affidavit of at least two credible persons, residents from the county where the prosecution is instituted, for either of the following causes, the truth and sufficiency of which the court shall determine:

(1) that there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial.

\* \* \* \* \* \*

TEX.CODE CRIM.PROC.ANN. art. 31.03 (Vernon Supp.1987).

At the first trial the court was presented with evidence concerning whether the appellant could receive a fair trial despite allegedly prejudicial publicity. In order to show reversible error a defendant must demonstrate that the ruling of the trial court amounted to an abuse of discretion. *Eckert v. State,* 623 S.W.2d 359, 363 (Tex. Crim.App.1981); *Freeman v. State,* 556 S.W.2d 287, 296–97 (Tex.Crim.App.1977), cert. denied, 434 U.S. 1088, 98 S.Ct. 1284, 55 L.Ed.2d 794 (1978). Here appellant had the burden to demonstrate there was a prejudice in the community of such magnitude that the likelihood of the accused obtaining a fair trial and an impartial jury was in doubt. *Nethery v. State,* 692 S.W. 2d 686, 694 (Tex.Crim.App.1985), cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed. 2d 931 (1986). Absent a showing of such prejudice the trial judge was within the limits of his discretion in denying the change of venue. *Ussery v. State,* 651 S.W.2d 767, 772 (Tex.Crim.App.1983); *Stanley v. State,* 664 S.W.2d 746, 754 (Tex. App.—San Antonio 1983, pet. ref'd), cert. denied, 472 U.S. 1018, 105 S.Ct. 3481, 87 L.Ed.2d 616 (1985).

To determine whether prejudice arising from pretrial publicity made it impossible to obtain a fair trial the trial court should consider: (1) the nature of the pretrial publicity and the degree to which it has circulated in the community; (2) the nexus between law enforcement officials and the release of the publicity; (3) the amount of time between the release of the publicity and the trial; (4) the severity and notoriety of the crime; (5) the area from which the jury is to be drawn; (6) other events occurring in the community which either effect or reflect the attitude of the community or individual jurors toward the accused, and (7) any factors likely to effect the candor and veracity of the prospective jurors during voir dire examination. *Henley v. State,* 576 S.W.2d 66, 71–72 (Tex.Crim.App.1978).

■ Applying these seven factors to this case, we find that the trial court correctly denied appellant's first motion. The record is silent regarding the nature of the pretrial publicity, Neaves stating only that he had read some newspaper articles and had seen some reports on television. There is no evidence of any connection between the media release of information on the case and law enforcement officials. Trial in the present case commenced over 9 months after commission of the offense; moreover, the newspaper and television coverage referred to by Neaves occurred almost 5 months before the beginning of the second trial. There was no new motion filed nor evidence presented at the second trial. While a charge of murder is clearly severe, this case could not be characterized as particularly notorious. *Compare Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). The jury was drawn from Bexar County which has a population in excess of 900,000 persons. The record does not reflect whether any other events were unfolding in the community which would affect the attitude of the community toward the accused. *Compare Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed. 2d 543 (1965). Finally, the record does not reflect that there existed any factors which might affect the candor and veracity of the jury panel.

Appellant complains that eight of the twelve jurors who ultimately decided the case had encountered publicity through various media sources. However, the members of the panel who testified that they had been exposed to some media accounts regarding the death of the child recounted certain uncontested facts: the victim was a young child who died from scalding burns suffered in a bathtub, and that the baby-sitter had been arrested. Appellant challenged for cause only one member of the jury who actually sat on this case. After the challenge this juror was questioned by the court and then extensively questioned by appellant. Appellant did not again raise his objection when this member of the panel was seated. It was written in *Freeman v. State, supra:*

In *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, Justice Clark, speaking for the Court, wrote that it is not required that jurors be totally ignorant of the facts and issues involved in this day of widespread and diverse methods of communication. He also noted that an important criminal case can be expected to arouse interest of the public in the vicinity and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.

\* \* \* \* \* \*

Our courts cannot and do not operate in a vacuum. Courts deal with people and crimes which are newsworthy. To require a trial of jurors who had never heard of a highly publicized crime would be impractical if not impossible. Certainly, it was never intended that jurors were to be selected from those who did not read newspapers or keep up with current events through other media. Jurors selected from such a group, if there are enough to be called a group, would not be representative. To hold otherwise would be to hold that the perpetrator of a very highly publicized crime such as the assassination of a president, a governor or any widely known person could never be tried.

*Id.* at 296–97 citing *Adami v. State*, 524 S.W.2d 693, 704 (Tex.Crim.App.1975) and *Morris v. State*, 488 S.W.2d 768, 771 (Tex. Crim.App.1973).

■ We find that, although a majority of the prospective jurors had heard and read of the case, all twelve who served testified that he or she could and would try the case strictly on the evidence introduced and would base the verdict on what was heard and observed in the courtroom. We find no evidence that appellant did not receive a trial by an impartial jury free from outside influences. *See Sheppard v. Maxwell, supra; Freeman v. State, supra; Adami v. State, supra; Morris v. State, supra.*

■ While the provisions of the venue statute, art. 31.03, *supra*, were alleged in the Motion for Change of Venue in the first trial, no motion was filed in the second

trial. Since the trial court had previously acted on that motion by denying it, the requirements of the statute mandated that a motion for change of venue be filed relative to the second trial to place the question before the trial court at that time. We conclude the trial court did not abuse its discretion in denying change of venue. The fourth point of error is overruled.

The judgment of the trial court is affirmed.